**S. M. CONNELL, Individually and d/b/a City Guaranty Co. and d/b/a Safeway Finance Company, Appellant,**

v.

**Victor ROSALES and wife, Faustina Rosales, Appellees.**

No. 7830.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 26, 1967.

Whitley R. Sessions, Sessions, Sessions & Ackels, Dallas, for appellants.

Fritz & Vinson, Dallas, for appellees.

FANNING, Justice.

Appellee Victor Rosales, on behalf of himself and his wife, Faustina Rosales, brought suit against several defendants for usury damages and for actual and exemplary damages resulting from unreasonable collection efforts.

All of the defendants except appellant Connell and his two offices, City and Safeway, were dismissed prior to trial, and none of said other defendants were brought back into the case by either party.

A jury in response to special issues found that appellant's companies were lenders rather than brokers, that plaintiff-appellee

and his wife had paid appellant more money than they received, and that the appellant's agents, servants and employees had made unreasonable collection contacts upon appellee and his wife. $5,500.00 was awarded by the jury as compensation for mental and emotional pain and physical illnesses suffered by plaintiff-appellee and his wife. The jury further found that appellant's collectors were motivated by malice and awarded $4,000.00 as exemplary damages.

The jury further found that obligations to other parties were not the sole proximate cause of Victor and Faustina Rosales' mental suffering and physical illness.

The trial court rendered judgment for appellee, (and after remittitur of appellee of $76.00 usury double damages) awarding appellee Victor Rosales $188.00 usury damages, $3,000.00 actual damages and $2,000.00 exemplary damages and awarded on behalf of appellee's wife, Faustina Rosales, $80.00 usury damages, $2,500.00 actual damages and $2,000.00 exemplary damages. Appellant has appealed.

Under his first point appellant contends in effect that the trial court did not correctly compute the award of the usury penalty of $188.00 in favor of Victor Rosales and the usury penalty of $80.00 in favor of Faustina Rosales. In this connection appellant contends that the correct amounts of usury penalties to be awarded to Victor Rosales and Faustina Rosales were $136.00 and $40.00 respectively. We have examined the statement of facts and authorities cited by the parties in support of their respective contentions and we hold that the trial court did not err in awarding $188.00 to Victor Rosales and $80.00 to Faustina Rosales as double usury penalties. Appellant's first point is overruled.

Appellant's second and third points are as follows:

### "POINT OF ERROR II.

"The trial court erred in awarding exemplary damages against Appellant when the evidence and the pleading of intentional and unreasonable acts or reckless disregard of Plaintiff's health in subjecting Plaintiff to emotional distress was insufficient to support an affirmative finding of malice against Appellant.

### "POINT OF ERROR III.

"The Trial Court erred in imputing the acts of employees at City Guaranty Company and Safeway Finance Company to Appellant, the owner thereof, in the absence of proof or a jury finding that such acts complained of were authorized or ratified as alleged in Plaintiff's Petition paragraph 28."

Appellee, in his pleadings, set out that the collectors making contacts upon appellee and his wife were in fact agents and employees of appellant and were acting within the scope of their employment, pleading in part as follows:

"From on or about July, 1958, until on or about December, 1959, every time Plaintiff was behind in the payment schedule established by Defendant, both before and after Plaintiff had repaid in full the principal borrowed, Defendant and Defendant's agents and employees in the period involved herein, whose names are well known to the Defendant, made the hereinafter described contacts on behalf of, in the employment of, and with the expressed and implied authority of the Defendant herein. Defendant ratified each of the acts alleged herein, which each of the Defendant's agents and employees committed, by various acts including accepting the retained benefits of such act after actual knowledge thereof, or after knowledge of facts sufficient to put Defendant reasonably on notice or inquiry thereof."

Appellee further alleged in his pleading that the program of harassment engaged in by defendant-appellant "was an integral part of Defendant's business. Without this harassment it would have been impossible

for the Defendant to have collected so much usury from plaintiff or anyone else".

In his pleading appellee set forth the names of agents of appellant dealing with and making collection efforts against him and his wife. He alleged them to be "Doris White at City Guaranty; Woody Downs and Mrs. Wilson at Safeway".

Appellee clearly alleged the complained of and detailed unreasonable collection contacts as acts of agents, servants and employees of appellant, which appellee alleged were authorized and ratified by appellant-defendant. We find such pleadings to be sufficient to support a finding of malice to be imputed against appellant Connell.

Defendant-appellant did not object to any of the special issues submitted by the court. In special issue No. 2, the trial court specifically asked whether "City and/or Safeway, through their agents, servants and employees, in the period of time between July 7, 1958, and mid 1959 made unreasonable collection efforts upon Victor Rosales". The court in special issue No. 6 further asked whether "the collection efforts, if any you have found in answer to Special Issue No. 2, were motivated by malice".

Likewise in special issue No. 8 the court inquired concerning the collection efforts of City and/or Safeway and their agents, servants and employees. An issue similar to No. 6, and premised upon No. 8, was submitted as special issue No. 12, wherein the court asked if the collection efforts in question were motivated by malice. In each of the four preceding special issues, the Court asked not whether the acts complained of were committed by Mr. Connell, the owner of City and Safeway, but whether the acts complained of were committed through the agents, servants and employees of City and/or Safeway. In each of the four incidences the jury found that through the agents, servants and employees of the defendants unreasonable collection efforts were committed, and that they were motivated by malice.

Appellant did not object to any of said issues or any portion of the court's charge, nor did he request any issues as to whether the agents, servants or employees of defendant-appellant were acting outside the scope of their authority, nor did he request any special issue or issues as to whether he had ratified the acts of his agents, servants and employees.

It was undisputed that appellant owned the two loan companies, City and Safeway.

█ We have carefully examined the Statement of Facts, and we think it clearly shows that the unreasonable collection efforts found by the jury were of such a nature as to constitute a "gross indifference to the rights of others, as will amount to a wilful or wanton act". The trial court also defined malice as "ill will, bad or evil motive". Appellant did not object to the court's definitions of malice. We think the jury's findings that the agents, servants and employees of the defendant committed the unreasonable acts complained of with malice are amply and sufficiently supported by the record in this case.

W. N. White testified that he had formerly worked for S. M. Connell, appellant herein, as manager of W. N. White Loan Broker, from 1958 through 1960. He testified that S. M. Connell also owned City Guaranty at 315 North Ervay and Safeway Finance Company at 317 North Ervay, and that W. N. White Loans operated at 321 North Ervay, and that his wife, Mrs. White, managed City Guaranty during the period of time in question. Mr. White testified to the effect that the collection procedures were basically the same in the office he managed and in Connell's loan offices, except for a few minor differences. He testified that collection letters were followed by contacts by telephone, and Mr. White confirmed the testimony and allegations of plaintiff-appellee when he testified that the agents and employees were under no particular limitation as to the number of telephone calls which they were permitted to make to a man's job, that they

would call every day if necessary, and if necessary they would talk to a man's supervisor concerning the employee's account. He further testified that even though they knew there were some companies who refused to give messages to the employees, nonetheless, appellant's offices would attempt to leave a telephone number for a delinquent customer they might have attempted to reach at the customer's place of employment. Mr. White further confirmed that he did know that some employers terminate their employees when these employees are contacted on the job. Mr. White further testified to the effect that there was no limitation on the number of cards and letters which the collectors were permitted to mail to a customer's home or even to his place of employment, and that if necessary to contact the customer, they would mail letters and cards to that customer's job, and in some instances special delivery letters, even though the customer instructed the loan company that he did not want any special delivery letters sent to his job, and that in some instances the loan companies would contact a customer, even if he told them he was sick. The daily telephone calls and collection letters and other harsh collection methods detailed by Rosales and his wife were clearly a part of the usual and customary loan company practice of appellant's companies to harass Rosales and his wife into capitulating to appellant's demands to pay usury.

■ The principal is liable for exemplary damages growing out of the acts of an agent when the principal authorized, participated in, or ratified the acts of the agent. 25 C.J.S. Damages § 125(4), p. 1153, Note 23; Wright v. E–Z Finance Company, Tex.Civ.App., 267 S.W.2d 602, wr. ref., n. r. e. (1954).

■ Such authorization, participation or ratification may be established by circumstantial evidence. Johnson v. Texas Gulf Coast Corporation, Tex.Civ.App., 359 S.W. 2d 91 (1962).

■ Likewise, testimony that the alleged principal had adopted similar acts in transactions with others, at about the time of the transactions under consideration, is admissible, as bearing upon the issue of whether or not the agent had authority. 2 Tex.Jur. 2d, Agency, § 260, and authorities cited therein.

■ The principal's presumed knowledge of the agent's acts may be further established if the agents acted without protest or repudiation on the part of their principal, thus raising the inference that such acts were made by the agents with knowledge and concurrence of the principal. People's Building, Loan & Savings Ass'n. v. Keller, 20 Tex.Civ.App. 616, 50 S.W. 183 (1899).

■ The record is clear that Connell accepted the benefits and proceeds derived from his agent's acts in making unreasonable, harsh and wrongful collection methods, which circumstantial evidence (together with the evidence of Mr. White) indicates was the usual and customary pattern of the methods used by Connell's loan companies. Mr. Connell did not take the witness stand to attempt to disown or repudiate any of the acts of his collectors and agents. In the absence of any evidence offered by Mr. Connell to show his lack of knowledge of his collectors' activities, it is then presumed that he did have knowledge of his agents' assumption of authority. 2 Tex.Jur. 2d, Agency, § 251, and authorities cited therein.

Appellant contends to the effect that in the absence of a jury finding that the acts of appellant's collectors were authorized, ratified, or in some way participated in by Connell, that the malice found by the jury cannot be imputed to appellant Connell.

■ No party requested such an issue on the collectors' authority, and appellant did not object to the failure of the court to submit such an issue. Under Rule 279, Texas Rules of Civil Procedure, omitted issues must be deemed as having been found in

support of the judgment rendered by the trial court. The determination of such an issue by a jury was waived and under such circumstances the trial court decided the issue in accordance with the evidence and in support of its judgment. In this connection, see J. & M. Construction Company v. White, Tex.Civ.App., 371 S.W.2d 780, wr. ref., n. r. e. (1963).

We find that the evidence in this case was sufficient to support an implied finding by the trial court in support of its judgment to the effect that appellant Connell, failing to show his lack of knowledge of the acts of his agents, accepted the benefits of the acts of his agents, ratified their acts and authorized same. We think it is clear that the trial court's judgment is supported by sufficient evidence of probative force of a series of unreasonable, wrongful and harsh acts of indifference to the welfare of plaintiff and his wife, and in the absence of any denial by Connell of knowledge of such acts of his collectors and agents, the record justifies the imputation of malice to appellant Connell.

Appellant's second and third points are overruled.

Appellant by his fourth point contends to the effect that the trial court erred in awarding exemplary damages to Faustina Rosales when the only pleading was for a single sum of exemplary damages to be awarded to her husband, Victor Rosales.

■ Plaintiff alleged that defendant committed various unreasonable collection acts and contacts both on himself and his wife, Faustina, and stated that, "Plaintiff is entitled to exemplary damages in the sum of $8,000.00". Appellee offered substantial evidence that such acts and contacts were committed upon both plaintiff and his wife. No objection was made to the admission of such evidence. Defendant-appellant requested no issues, nor did he object to any of the issues submitted by the trial court with respect to exemplary damages as to Faustina Rosales.

■ Damages awarded a wife for her injuries are community property in Texas. Garrett v. Reno Oil Company, Tex.Civ. App., 271 S.W.2d 764, wr. ref., n. r. e. (1954). The husband alone may sue for its recovery as such. Houston Gas & Fuel Company v. Spradlin, Tex.Civ.App., 55 S. W.2d 1086 (1932).

Appellant's fourth point is deemed to be without merit and is overruled.

■ Appellant by his fifth point contends to the effect that the $5,500.00 actual damages awarded appellee and his wife should be reduced by four-fifths by reason of appellant having settled with four other former defendants. In this connection appellant relies upon the rule of law announced in Palestine Contractors, Inc. v. Perkins, Tex.Sup.Ct.1964, 386 S.W.2d 764.

We think *Palestine* is not applicable to the fact situation in the case at bar, but that the case of Petco Corp. v. Plummer, Tex.Civ.App., 392 S.W.2d 163, wr. ref., n. r. e. (1965) is applicable to the situation at bar.

In the case at bar appellee originally asserted a cause of action for usury and/or unreasonable collection efforts against several loan companies and their owners. Prior to the filing of his suit, plaintiff-appellee had already compromised some claims against Atlantic and Southland and against City Finance and First Finance. Chesterfield, Signature, Texas and Time were sued as original defendants, along with appellant Connell and his two companies, Safeway and City. Several months prior to the trial plaintiff-appellee settled his claims against defendants Chesterfield, Signature and Time. They were dismissed from the suit.

The trial was only as to appellee and appellant and his companies. (Except as to appellant's wife, who was later dismissed from the suit). None of the original defendants were brought back into the suit by appellant, nor did he request any issue to the effect that any other party was a joint tort-

feasor or was a proximate cause of any damages claimed by the appellee.

Appellant made no objection to the court's charge which did not contain issues inquiring as to whether any other party or parties other than the appellant were tortfeasors. The verdict of the jury does not reflect that any other parties contributed to or were a proximate cause of any mental or emotional pain and physical illnesses suffered by appellee Rosales or his wife.

As above stated, the record shows that appellee compromised claims with various parties both before and after he filed his suit. (The nature of such claims was not shown; the basis or amounts of settlement were not shown). There was no showing that any of the four defendants (or other parties) settled with was a joint tortfeasor with appellant in any of the transactions for which appellant was sued for, nor was there any showing of proximate cause of any mental or emotional pain and physical illnesses suffered by plaintiff-appellee Rosales and his wife, and if so, which compromising parties these were, and such matters were simply not determined in any manner.

Only after verdict did appellant attempt to raise the question that there might have been other tortfeasors involved in the transactions sued upon.

In *Petco*, supra (392 S.W.2d 163), the plaintiff had been injured when escaping gas caused an explosion in a house where he was working. Plaintiff sued the builder, the gas company, the plumbing company and the electric company. Before trial, plaintiff settled his claim with the gas company, the plumbing company, and the electric company. Before trial the builder by way of cross-action brought the gas company back into the case. Both the gas company and the builder were found by the jury to be negligent, and both acts were found by the jury to be each a proximate cause of the explosion and ensuing damages to plaintiff.

In *Petco* the builder's claim for contribution from the gas company, (which gas company was found by the jury to be a joint tortfeasor proximately causing the explosion), was granted by the trial court and thus diminished the plaintiff's verdict by one-half. However, as to the other defendants who had not been brought back into the case and who had not been found to be joint tortfeasors, the trial court did not allow contribution. In affirming the judgment of the trial court, the Dallas Court of Civil Appeals, opinion by Justice Bateman, stated in *Petco* in part as follows:

"Appellant Petco argues in its second point of error that, since Plummer had settled with three other joint tortfeasors, the judgment against appellant should have been for only one-fourth of Plummer's damages as found by the jury. \* \* \*

"Appellant relies on the recent case of Palestine Contractors, Inc. v. Perkins, Tex.Sup.1964, 386 S.W.2d 764.

\*     \*     \*     \*     \*     \*

"However, we are not persuaded that the holding in Palestine Contractors, Inc. v. Perkins, supra, requires limiting the judgment against appellant in this case to one-fourth of the total damages found. We think the cases are easily distinguishable. In the Palestine Contractors case the other tortfeasor Conoway was a party to the suit, was definitely being sued on the third party action for indemnity or contribution, *and the jury convicted him of an act of negligence proximately causing the collision. Thus it was established beyond doubt that Conoway was a joint tortfeasor.* In the present case, however, neither L. & L. Electric Company nor Gene's Plumbing Company was a party to the suit; no one was alleging that either of them had negligently caused the explosion; *and Petco did not see fit to bring them back into the case, as it did Lone Star, and sought no indemnity or contribution against either of them in the trial court, and*

*there was no finding of fact that either of them was guilty of any negligence proximately causing the explosion.* As we read and understand Justice Greenhill's scholarly opinion in Palestine Contractors, Inc. v. Perkins, supra, it does not require the award of damages to be diminished in proportion to the number of persons claimed by the appellant, for the first time in the appellate court, to have participated in the wrongdoing which caused the plaintiff's injuries, *but only in proportion to the number of parties to the suit who have been found to be tortfeasors as alleged.*" (Emphasis added).

Appellants' fifth point is overruled.

The judgment of the trial court is affirmed.