**Richard E. LEONG, Appellant,**

v.

**Curtis WRIGHT, a Minor by next friend Joe Paul Wright, et al., Appellees.**

**No. 567.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 29, 1972.

Rehearing Denied April 19, 1972.

Frank B. Davis, Andrews, Kurth, Campbell & Jones, Thomas L. Schubert, Houston, for appellant.

James A. Moore, Don R. Riddle, John M. O'Quinn, Brown, Kronzer, Abraham, Watkins & Steely, William E. Matthews, Baker & Botts, Houston, for appellees.

BARRON, Justice.

The plaintiff below, Curtis Wright, by and through his father, Joe Paul Wright, as next friend, filed suit against Verna Ellis Harrell and husband, D. H. Harrell,

defendants, on April 14, 1966. Plaintiffs' original petition alleged that Curtis Wright, a minor child, was severely injured as a result of the negligence of Verna Ellis Harrell when she struck the boy with her 1963 Ford automobile on October 14, 1964. Damages were alleged generally, and the plaintiff prayed for a recovery of $175,000.00. Plaintiffs' first amended original petition added, with related allegations, Spring Branch Memorial Hospital and Dr. Richard W. Leong as defendants, prayer for a total of $475,000.00 was made, and such petition was filed August 22, 1966. Plaintiffs' second amended original petition, filed January 6, 1971, the trial pleadings, alleged actions for damages only against Dr. Leong and Spring Branch Memorial Hospital and dropped the Harrells as defendants.

On September 23, 1966, plaintiffs entered into an agreement with the Harrells, by which agreement plaintiffs covenanted not to sue the Harrells, make claim, or institute any action or proceeding, directly or indirectly, against them for any damages which may have resulted to plaintiffs from the incident made the basis of the suit. It was stipulated that such agreement was in all things subject to the approval and apportionment of the court by reason of the minority of the principal plaintiff. The Harrells agreed to pay plaintiffs a total sum of $8,500.00 in settlement of the claim against them. On the same day the plaintiffs and the Harrells went before the court and presented the agreement above. The court found, on the evidence presented and by agreement, that the Harrells had agreed to pay by way of compromise the sum of $8,500.00 without any admission of liability on their part by reason of the accident, and the court further found that plaintiffs specifically reserved their cause of action against Spring Branch Memorial Hospital and Dr. Richard Leong as provided by the agreement. Interlocutory judgment was entered approving the settlement agreement, and the $8,500.00 was apportioned and paid. Also, on the same day the same parties entered into another agreement releasing the judgment, again with a covenant not to sue the Harrells and agreeing to indemnify and hold harmless the Harrells from any liability growing out of the incident. Again the causes of action against the hospital and Dr. Leong were reserved to plaintiffs, and again the Harrells denied liability and stated that the settlement was made in compromise to avoid trouble and further expense of litigation.

Trial began on March 15, 1971. On or about March 25, 1971, while the attorneys were discussing the preparation of the trial court's charge to the jury, counsel for plaintiffs took a non-suit against the hospital. Such non-suit was accepted and allowed by the court, and the case proceeded only against Dr. Richard Leong. Plaintiffs and the hospital had entered into an agreement on March 24, 1971, by which the hospital agreed to pay $15,000.00, and in return plaintiffs would take the non-suit above referred to, reserve their claims against Dr. Richard Leong in full, agreed and covenanted not to sue the hospital as a result of the incidents involved, and agreed to indemnify and hold harmless the hospital and its employees against any action brought by Dr. Leong in the form of claims for contribution or indemnity due to any judgment or other liability of Dr. Leong in favor of the plaintiffs. The trial court heard and approved such agreement on March 25 and the formal papers were filed on May 3, 1971. Approval was required because of Curtis' minority and for apportionment of the settlement.

After it became known to the attorney for Dr. Leong that settlement had been made on March 25, 1971, with the hospital, Dr. Leong made motion for trial amendment to file a cross-action against Spring Branch Memorial Hospital to determine whether the hospital was a joint tortfeasor and to allege contribution as against the hospital. This also occurred on March 25, 1971. The motion was denied by the court. A renewal of the motion was filed on April 30 after the verdict was returned and was overruled on May 12, 1971. Dr.

Leong also moved during the preparation of the charge for a trial amendment to plead unavoidable accident. That motion was denied by the court. Dr. Leong also made motion, after verdict, for a reduction of the jury's award and entry of judgment against Spring Branch Memorial Hospital. The doctor claimed that by reason of all the facts and the settlements involved he was now entitled to a reduction of damages awarded against him by one-third (if there were three defendants in the case) or by one-half (if there were two defendants in the case at the time of the reduction). In the alternative, the doctor sought credit in the amount of any agreed judgment against the hospital ($15,000.00) upon any judgment rendered against him. The trial court did, in its final judgment, credit the judgment against Dr. Leong in the amount of the above $15,000.00, the reasons for which being more clearly defined below.

Judgment was rendered against Dr. Leong on May 12, 1971. The amount of the judgment was $149,150.00, but $15,000.00 was subtracted from that sum because of the payment to plaintiffs of $15,000.00 by the hospital. See Petco Corporation v. Plummer, 392 S.W.2d 163, 165 (Tex.Civ. App.—Dallas 1965, writ ref'd n. r. e.). The net amount of the recovery in favor of plaintiffs was $134,150.00. Motions for judgment non obstante veredicto and for new trial were filed and overruled by the court. Dr. Leong has appealed as against Curtis Wright, a minor, Richard P. Hogan, his attorney ad litem appointed by the court, and Joe Paul Wright as appellees. Spring Branch Memorial Hospital is also named as an appellee. The parties will hereafter be designated as appellant and appellees.

The jury found in answer to special issues submitted that the cast applied by appellant to Curtis Wright's leg became so tight as to impair circulation, that the appellant thereafter failed to use ordinary care to correct the impairment, and that such failure was a proximate cause of *any*

*additional damage to Curtis Wright's foot and leg, over and above that which did exist as a result of the automobile accident of October 14, 1964*; that appellant after signs of circulatory failure failed to remove the cast from around the boy's leg as promptly as would have been done by a reasonably prudent orthopedic surgeon, in the exercise of ordinary care, under the same or similar circumstances, and that such failure was a proximate cause of any additional damage (as italicized above); that when appellant examined the boy on October 14, 1964, he had vascular damage to the extent that life of the limb was in danger, that appellant failed to discover the above as would have been done by a reasonably prudent orthopedic surgeon in the exercise of ordinary care, under the same or similar circumstances, and that such was a proximate cause of any additional damage (as italicized above); and that the automobile accident was not the sole proximate cause of the loss of the boy's leg below the knee. The jury assessed damages at $134,000.00, to which was added under an alleged stipulation of the parties, the sum of $15,150.00 for future and necessary prosthetic devices, upon presentation of evidence to the court in the absence of the jury. Of course, as stated above, the hospital's $15,000.00 payment was credited. The damage issues provided that damages be excluded which existed by reason of the automobile accident of October 14, 1964. Thus, the trial court did not directly credit the $8,500.00 settlement with the Harrells by reason of the above special issues and instructions to exclude the incident and any resulting damages of October 14, 1964.

Appellant contends that the trial court erred in overruling his motion and renewed motion to amend and to cross-act for contribution against the hospital, or alternatively to reduce the amount of damages by an appropriate percentage; in failing to credit $8,500.00 and $15,000.00 against the verdict (the prior payments made to plaintiffs); in overruling appellant's motion for a take-nothing judgment as to Dr. Leong by

reason of the prior judgment as to the Harrells having been satisfied, or that the amount of damages be reduced; in receiving testimony regarding certain prosthetic devices for the appellee and the value thereof, and in adding a certain portion thereof to the amount of recovery. It is further contended that the trial court erred in overruling appellant's requested trial amendment to plead unavoidable accident; in reading the entire deposition of Dr. Minyard to the jury and appellant's related motion for mistrial; and in failing to provide apportionment of the judgment among the plaintiff-appellees. Contention is also made that the evidence is insufficient or is so contrary to the great weight and preponderance of the evidence as to be clearly wrong as to special issues numbers 2, 4, 7 and 8.

The evidence shows that Curtis Wright, a child of approximately four years at the time of his injury on October 14, 1964, was struck by an automobile driven by Mrs. Verna Harrell near the 1300 block of Cheshire Street in Houston, Texas. The vehicle backed over the child, and as a result thereof Curtis sustained a broken leg. The boy sustained a compound comminuted fracture of the tibia and a fracture of the fibula in his right lower leg. The fracture to each bone was just above the ankle. Curtis was immediately taken to the hospital. He was seen by Dr. Martinez who was taking calls for Dr. Collier. Dr. Leong, the appellant and an orthopedic surgeon, was called into the case. He examined Curtis in the emergency room and later that night operated upon him. Curtis was confined there from Wednesday evening, October 14, 1964, until Sunday evening, October 18, 1964, at which time he was transferred to Methodist Hospital, under the care of Doctors Leong and Jordan. While at Spring Branch Memorial Hospital, appellant did an open reduction to set the comminuted fractures and thereafter applied a circular cast completely enclosing the right lower leg except for the toes. Five days later, gangrene appeared

in the right lower leg, and Dr. Leong called in a vascular surgeon who transferred Curtis to Methodist Hospital for additional treatment to try to save his leg. Upon arriving at Methodist Hospital, the boy underwent a lumbar sympathectomy and also a fasciotomy. The treatment was unsuccessful, and Curtis' right leg later had to be amputated just below the knee. There is evidence to show that the cast applied by Dr. Leong impaired the circulation in the right lower leg much like a tourniquet and that such was the cause of the gangrene. The jury found that appellees' theory was true and additionally found that Dr. Leong was negligent in not having removed the cast. Dr. A. E. Minyard, also an orthopedic surgeon, of Galveston, and being qualified as such, testified by deposition that the impaired circulation which resulted in the amputation of the boy's leg was the result of edema or swelling which was caused by the injury and which did not have room to expand because of the constricting plaster of paris cast resulting in blockage of the venous return and increased pressure, resulting in no arterial blood supply, and then death of the tissue. Early recognition of impaired circulation is of paramount importance to the orthopedic surgeon. When recognized early, many cases which would otherwise go to paralysis, gangrene and amputation can be avoided. In all medical probability, the first indication of impaired circulation occurred about 10:00 a. m. of the morning following the injury. There is sufficient evidence in the record that if the cast was impairing the circulation, appellant should have discovered and remedied such impairment.

Dr. Joseph Jachimczyk, a recognized pathologist, testified that based upon the report of the hospital pathologist who was deceased and not available as a witness at time of the trial, there was no evidence of substantial damage to the soft tissue of the fractured leg or any suggestion of vascular injury. The findings and report of the hospital pathologist (in the admissible hospital records) were based upon

examination of tissue supplied by appellant from his operation on the first day of hospitalization.

Approximately twenty-four hours after the operation and application of the full circular cast, Dr. Leong split it lengthwise and spread it slightly to change the dressing. This was Thursday night, the night after the accident. At such time the hospital records show that Curtis' toes had been gradually losing their warmth and color since the original application of the cast and were in fact cold and dark when Dr. Leong arrived. The nurse had written in her notes four hours earlier that "Cast around seems tight" and "Dr. Leong notified of condition of casted toes." The hospital records then indicate that appellant did not return for approximately 48 hours, although during that time, the toes remained cold and blue and although the nurse had communicated these facts to him. When appellant did return for his second post-operative examination at 8:00 p. m. Saturday night, about 72 hours after the operation, he spread the cast further at that time, which caused the toes to regain their warmth and color. Six hours later, the toes again lost their warmth and color. The hospital records reflect that it was approximately 19 hours before Dr. Leong again returned, at which time the doctor completely removed the cast, but the toes would not regain their warmth and color. Appellant then notified the parents for the first time that Curtis was probably going to lose his leg, and it was also at this time that he first called in a vascular surgeon to consult. The vascular surgeon had Curtis removed to Methodist Hospital for additional treatment. Appellant claimed that the loss of circulation was due entirely to vascular injury caused by the initial accident and by the automobile having run over the leg which traumatized the arteries and veins, but the latter is refuted by the circumstances and by other testimony. The testimony, of course, was materially conflicting. The jury was entitled to reject the testimony of two orthopedic surgeons placed on the witness stand by appellant, Dr. Michael M. Donovan and Dr. George Lyman Jordan, Jr., the first of whom testified that the fact that circulation appeared to be interrupted at the point of the fractured bone shows that Curtis had vascular injury and soft tissue injury at that point, caused by the original accident, and the fact that the leg was amputated at precisely that point on March 3, 1965, would substantiate his opinion. Almost the same testimony was elicited from Dr. Jordan, plus the fact that Dr. Leong told him that the cast was not too tight. However, Dr. Jachimczyk testified that the greatest swelling inside the cast would be at the fracture site, and it was the swelling coupled with the tight cast that caused the circulatory impairment. The jury was entitled to make findings under the evidence as it saw fit and proper. Appellant did not in any manner contend, offer testimony, or accuse the hospital of any wrongdoing. He testified that the hospital personnel did nothing wrong, that they kept him properly advised, and that they carried out his orders. The nurses at Spring Branch Memorial Hospital are excellent, they are interested in the patients and are qualified. And while there are some differences of opinion, such does not mean that there is any negligence nor does it mean that they are not qualified. He further testified that in the case of Curtis Wright, there was nothing in the records or in his observation to lead appellant to believe that the hospital personnel had failed to live up to the proper standard of care. Appellant was questioned as above by the attorney for the hospital. Yet there was some circumstantial evidence that special issues may have been warranted for submission to the jury to determine the hospital's possible liability.

In this malpractice case a doctor of the same school of practice as appellant testified sufficiently to facts and opinions which authorized a finding or findings of negligence, by the jury, and that such negligence was a proximate cause of the patient's injuries. Dr. Minyard is an orthopedic surgeon, and his testimony and other

evidence overcame the usual and much criticized rule barring the successful prosecution of such actions. See Bowles v. Bourdon, 148 Tex. 15, 219 S.W.2d 779, 782 (1949).

■ We shall dispose of two contentions made by appellant at the outset. All special issues submitted were fully supported by the evidence, were sufficient to support the judgment, and were not against the weight and preponderance of the evidence, based in part on the evidence summarized above.

We think the authorities largely controlling the disposition of this case are Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764 (Tex.Sup.1964); Gattegno v. The Parisian, 53 S.W.2d 1005 (Tex.Com. App.—1932, holding approved); McMillen v. Klingensmith, 467 S.W.2d 193 (Tex.Sup. 1971); Petco Corporation v. Plummer, 392 S.W.2d 163 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.); and Connell v. Rosales, 419 S.W.2d 673 (Tex.Civ.App.— Texarkana 1967, no writ). Also, we think the able and scholarly treatise by Professor Gus M. Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas L. Rev. 150, 170 (1947), is most helpful and is essentially and generally correct up to the present time. It is to be noted that Palestine Contractors, supra, definitely held that Tex.Rev.Civ.Stat.Ann. art. 2212 (1960), which gives to a defendant who has paid more than his share of the damages, a substantive right to a proportionate recovery against the other solvent defendants, who in turn retain a right of recovery of a judgment against the insolvent defendants. And further, a plaintiff or claimant cannot cut off from a defendant not a party to the settlement the right to contribution by any agreement with a third party. Palestine Contractors, supra, 386 S.W.2d p. 767.

Professor Hodges, in his treatment of this subject, states at page 170 et seq., above, as follows:

"It is now well settled in Texas that a plaintiff may preclude himself from re-

covering from one of several tortfeasors without barring his action against the others if he does so by way of a covenant not to sue, or a release which reserves his action against the others, unless the amount paid for the release is in full satisfaction of his damages, in which event his cause of action is barred entirely.[100] However,

"100. Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703 (1935) . . ; Gattegno v. The Parisian, 53 S.W.2d 1005 (Tex.Comm.App.1932); McMullen v. Coleman, 135 S.W.2d 776 (Tex. Civ.App.1940). Robertson v. Trammell, 37 Tex.Civ.App. 53, 83 S.W. 258 (1904) error ref'd, 98 Tex. 364, 83 S.W. 1098 (1904).

since one tortfeasor may not bar the right of another tortfeasor to contribution or indemnity, and since the plaintiff may not receive more than his full damage, the effect of such partial settlement must be considered.

"Since the plaintiff is entitled to no more than full compensation for his injuries, if the amount paid by alleged tortfeasor A is equal to or greater than the amount of damages plaintiff is found to have suffered, the plaintiff is entitled to no recovery against tortfeasor B; if the amount of the settlement is less than the determined amount of damage, then the plaintiff can recover from B only his damage less the amount he has already received in settlement from A; and this is so even though it be determined that A was not negligent at all or was entitled to indemnity from B.[101] Thus, if A has paid $6,500 to plain-

101. Ibid.

tiff, and in the latter's subsequent action against B it is found that the damage is $6,500, the plaintiff is not entitled to any judgment against B. If, instead the damage is determined to be $10,000, then plaintiff may recover only $3,500 from B.

"As pointed out in the preceding section, a tortfeasor who has settled with an injured party may then proceed against the non-settling tortfeasor for contribution or indemnity. Where the plaintiff

is proceeding against the non-settling tort-feasor and contribution is otherwise in order, the defendant may assert his claim to contribution. In such a situation, the amount already paid the plaintiff under the settlement is of course to be deducted from the amount of damage if it is equal to or greater than one-half of the damage. If the amount paid under the settlement is less than one-half of the amount of damage, the plaintiff may recover from the non-settling defendant only one-half of the amount set as damages, because plaintiff has accepted the settlement in satisfaction of the settling tortfeasor's liability, *and when it is determined that he was equally liable* then the liability has been satisfied to the extent of one-half.[102]

"102. Gattegno v. The Parisian, 53 S.W. 2d 1005 (Tex.Comm.App.1932).

"Thus, if tortfeasor A has paid $6,500 to the plaintiff and in the latter's suit against B the damage is determined to be $10,000, the recovery against B would be $3,500; if the damage is $13,000, recovery would be $6,500; damage $20,000, recovery $10,000; damage $30,000, recovery $15,000."

．　．　．　．　．　．

"It may well be that the problem will not arise because the release of one of several tortfeasors, or a covenant not to sue him, ordinarily includes an agreement on the part of the injured party to indemnify the settling tortfeasor from any further liability arising directly or indirectly (as in this case). In such a situation, if plaintiff secured judgment against nonsettling defendant and the latter recovered indemnity from the settling tortfeasor, the latter would be entitled to judgment against the plaintiff, so that no recovery would be had." (Parenthesis and emphasis added)

■ We think the problem here has been materially simplified by the decision in *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.Sup.1971), which repudiated in a situation of this kind the "unity of release rule". However, it is plain that no recovery will be allowed over and above full satisfaction of the total damages as the rule should be. The law is now clear that a release of a party or parties named or otherwise specifically identified, fully releases only the parties so named or identified, but no others. Palestine Contractors was not affected definitely by the decision in McMillen, the first of which was referred to in McMillen as a case concerning *true joint tortfeasors*.

■ It was stated in Cannon v. Pearson, 383 S.W.2d 565, 567 (Tex.Sup.1964) that "It has long been an accepted and established rule in this State that one who wrongfully injures another is liable in damages for the consequences of negligent treatment by a doctor or surgeon selected by the *injured person* in good faith and with ordinary care." (Emphasis added.) We see no failure of good faith or ordinary care as above referred to in this case. The appellant makes much of an interlocutory judgment which was rendered and entered in 1966 regarding settlement of a claim by the Wrights and the Harrells, and contends that such judgment and settlement require that we hold that a take-nothing judgment must be rendered here in favor of appellant, Dr. Leong, or that the amount of damages be materially reduced. We do not agree. The judgment was entered solely because a minor was involved and because the law requires such a procedure. Liability was denied, the customary releases and covenants not to sue were executed, and the judgment released. Under the circumstances, the formal judgment entered carried no more weight than the ordinary settlement agreement, covenant not to sue, and the indemnity agreement. The Harrells were never found to be true joint tortfeasors.

In Petco Corporation v. Plummer, 392 S.W.2d 163, 166–167 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.), the case of Palestine Contractors was considered and analyzed. In Petco it was held by Justice

Bateman, speaking for the Court in an opinion which we consider to be able and correct, that the Palestine Contractors case, supra, limiting the judgment against a co-tortfeasor (Palestine Contractors, Inc.) to one-half of the judgment rendered by the trial court and as found by the jury, was not applicable in a situation similar to the present case. Justice Bateman pointed out that in Palestine Contractors (one defendant) the other tortfeasor defendant, Conoway, was a party to the suit, was being sued on a third party action for indemnity or contribution, and the jury convicted him of an act of negligence proximately causing the collision there involved. Thus it was established by findings of the jury that the other defendant, Conoway, was a joint tortfeasor. It was held that the Palestine Contractors case does not require the award of damages to be diminished in proportion to the number of persons claimed by a tortfeasor to have participated in the wrongdoing which caused the plaintiff's injuries, but only in proportion to the number of parties to the suit *who have been found by the jury to be tortfeasors.* P. 167. The appellees, the Wrights, contend in their brief that Palestine Contractors was not given a one-half reduction of its liability simply because of the settlement with the joint tortfeasor, but rather the Court gave Palestine Contractors such relief because Palestine had proven its statutory right to contribution from the cross-defendant, Conoway, with whom the plaintiff had settled. The Supreme Court admitted its dilemma. Palestine Contractors had a judgment for contribution against the settling co-defendant which was enforceable. To enforce this judgment for contribution and uphold the settlement required that the plaintiff's damages in Palestine Contractors be reduced. No such dilemma is presented in this case, however, because the appellant, Dr. Leong, never pled for indemnity or contribution from the Harrells, or even the hospital, and never secured or requested jury findings which might establish that the remaining parties were actually joint tortfeasors. See also Connell v. Rosales, 419 S.W.2d 673,

678 (Tex.Civ.App.—Texarkana 1967, no writ).

We hold that cases cited by appellant on this point, including Hunt v. Ziegler, 271 S.W. 936, 937, 939 (Tex.Civ.App.—San Antonio 1925, aff'd 280 S.W. 546, Tex. Comm'n App.1926, jdgmt. adopted), are inapplicable to the facts of this case, and that such authorities are not here controlling.

■ Appellant further contends that the receipt of evidence under an alleged stipulation between the parties from a Mr. Muilenburg concerning future expenses relative to the cost of repair and replacement of prosthetic devices for Curtis Wright by reason of the loss of his leg, was error. Appellant states that the stipulation of the parties was vague and indefinite and in effect amounted to no stipulation at all which the court should recognize. In our opinion the stipulation, shown by the record, is amply clear and definite concerning this matter, and the attorney for Dr. Leong unequivocally agreed to it. The trial court accordingly heard testimony concerning the necessary costs involved after verdict and discharge of the jury, pursuant to the stipulation, and found that $15,150.00 was a proper sum under the circumstances, which was about one-half of the sum testified to by Muilenburg. We see no error in such procedure. This is frequently done as to various items of damage involved. See Akin v. Akin, 276 S.W.2d 323 (Tex. Civ.App.—Austin 1955, writ dism'd).

■ During the preparation of the charge, appellant moved for two trial amendments: One to cross-act against the hospital and another to plead the defense of unavoidable accident. Later, after the verdict, appellant renewed his motion for trial amendment to cross-act. Rule 66, Texas Rules of Civil Procedure permits trial amendments upon proper motion, but the matter of whether the motion is to be granted is one addressed to the sound discretion of the trial judge, and his ruling is not to be disturbed in the absence of a showing that he abused his discretion. At

this stage of the trial, we agree with the trial court that the allowance of such a trial amendment or amendments would have been improper, would have been prejudicial to appellees, and would have unduly complicated this difficult case. Moreover, the refusal of such amendments regarding contribution did not permanently foreclose or bar such action or actions by appellant. See Union Bus Lines v. Byrd, 142 Tex. 257, 177 S.W.2d 774 (1944); Missouri Pacific Railroad Co. v. Southern Pacific Co., 430 S.W.2d 900, 904–905 (Tex.Civ.App.—Houston (14th Dist.) 1968, writ ref'd n. r. e.). There was no hint of a plea of contribution in appellant's pleadings, and it seems that appellant desired to take the responsibility off the hospital. The type of strategy used in this case is clearly foreseeable from the beginning when more than one alleged tortfeasor is sued. We do not think the trial court's rulings amounted to reversible error under the circumstances. Westinghouse Electric Corp. v. Pierce, 153 Tex. 527, 271 S.W.2d 422 (Tex.Sup.1954); Herrin Transportation Co. v. Parker, 425 S.W.2d 876 (Tex.Civ.App.—Houston (1st Dist.) 1968, writ ref'd n. r. e.). When the court refused leave to file the trial amendments appellant did not request leave to withdraw its announcement of ready and did not request a continuance or postponement. Tanenbaum Textile Co. v. Sidran, 423 S.W.2d 635, 637 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); Emmons v. Travelers Insurance Company, 349 S.W.2d 282 (Tex.Civ.App.—Beaumont 1961, no writ).

We have carefully examined each and all of the contentions made by appellant, and all of them are overruled with the exception of appellant's complaint that the trial court failed to apportion the recovery between plaintiff-appellees. We therefore affirm the judgment of the trial court and remand the case to that court solely for the apportionment above mentioned. All costs herein expended are assessed against appellant.

TUNKS, C. J., not participating.