Maria Olivia VASQUEZ,
et. al., Plaintiffs

v.

BRIDGESTONE/FIRESTONE, INC.;
General Motors Corp; Lucent Technologies, Inc.; Lucent Technologies Maquiladoras, Inc., Defendants

No. CIV.A.1:01–CV–168.

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 30, 2001.

George Edmond Chandler, Chandler Law Offices, Lufkin, Dana R. Allison, Brownsville, Guy H. Allison, Corpus Christi, for Plaintiffs.

Edmundo O. Ramirez, Luis M. Cardenas, Ellis Koeneke & Ramirez, McAllen, for Plaintiff/Intervenors.

Morgan Lee Copeland Jr., Knox Nunnally, Vinson & Elkins, Houston, for Defendant Brigestone/Firestone.

Kyle Harold Dreyer, Hartline Dacus Dreyer & Kern, Dallas, for Defendant General Motors.

F. Edward Barker, Roland L. Leon, Margery Huston, Barker Leon Fancher & Matthys, Corpus Christi, for Lucent.

## MEMORANDUM OPINION

COBB, District Judge.

The defendants, Bridgestone/Firestone, Inc., General Motors Corp. (hereafter "GMC"), Lucent Technologies, Inc. (hereafter "Lucent"), and Lucent Technologies Maquiladoras, Inc. (hereafter "L.T.M."), have moved this court to enjoin Plaintiffs, Intervenors, and their attorneys of record from pursuing any claim against the defendants arising from the August 12, 1999 accident in a Texas state or federal court.

Upon consideration of the briefs submitted by the parties and oral arguments, the court is of the opinion that the permanent injunction should be GRANTED.[1]

This action arises out of a single-automobile accident which occurred in Nuevo Leon, Mexico, on or about August 12, 1999. The plaintiffs' and intervenors' decedents were passengers in a 1996 Chevrolet Suburban equipped with Bridgestone/Firestone tires. The Suburban was made, marketed, bought and maintained in Mexico. The Bridgestone/Firestone tires were clearly marked "Made in Mexico." The driver and seven passengers, all citizens and residents of Mexico, were proceeding from a training session in Matamoros, Mexico to their work site at Monterrey, Mexico. The seven passengers were employees of Servicios de Manufacturas de Monterrey, S.A. de C.V. ("Servicios"), which was under contract with Lucent to provide operating and managerial support to Lucent. The training session the Servicios employees had attended was required by Lucent.

The plaintiffs allege that, during the return trip, one of the tires delaminated, causing the Suburban to lose control and roll over several times. There is evidence that a tire did indeed delaminate. The driver and one passenger survived and recovered. The other six passengers, Valente Ibarra Ibarra, Jesus Davila Paz, Sergio Alberto Zavala Ponce, Gabriella Villagran Castro, Ivonne Juarez, and Hector Rojo Medina (collectively the "Decedents"), died. The surviving spouses of the Decedents, suing in multiple capacities, have filed multiple suits in Texas with regard to this accident. The following is a summary of the four known lawsuits that have been filed:

---

1. The court filed an Order granting the permanent injunction on November 19, 2001, with this memorandum opinion to follow.

**Vasquez I**–On March 15, 2000, surviving relatives of five of the Decedents (Ibarra, Paz, Ponce, Castro, and Juarez) (hereafter the "Plaintiffs") filed a lawsuit in the United States District Court for the Southern District of Texas against four defendants: Lucent, L.T.M., Bridgestone/Firestone, Inc., and Servicios. On May 15, 2000, surviving relatives of the sixth decedent, Hector Rojo Medina (hereafter the "Intervenors"), filed a plea in intervention. On June 14, 2000, Judge Tagle dismissed the action for lack of jurisdiction.

**Vasquez II**–On January 19, 2001, the Plaintiffs filed suit in the District Court for the 128th Judicial District, Orange County, Texas again against four defendants, but this time they substituted GMC for Servicios. The defendants removed the case to this federal court and then moved for a dismissal based on the doctrine of *forum non conveniens*. All parties filed reams of paper with this court thoroughly arguing their positions regarding the *forum non conveniens* issue, and on August 7, 2001, this court issued a Memorandum Opinion dismissing the case with prejudice on *forum non conveniens* grounds. This Memorandum Opinion will be discussed in greater detail below. On September 18, 2001, the Plaintiffs and Intervenors appealed this court's *forum non conveniens* ruling to the United States Court of Appeals for the Fifth Circuit.

**Vasquez III**–On February 21, 2001, surviving relatives of three of the Decedents (Paz, Zavala, and Ibarra) filed suit in the District Court for the 404th Judicial District, Cameron County, Texas against five defendants: Lucent, L.T.M., Bridgestone/Firestone, Inc., Bridgestone Corporation, and Laredo Quality Transfer Services, Inc. While there seems to be some disagreement between the parties as to whether the Plaintiffs authorized the filing of this case and therefore whether it should be counted as an attempt by the Plaintiffs and Intervenors to re-litigate this case, this court has been presented with a second amended petition filed on August 10, 2001, with 404th Judicial District, Cameron County, Texas by the attorneys representing the Plaintiffs on behalf of the Plaintiffs (the Intervenors also filed suit in the 404th Judicial District on August 10, 2001) and while the case may have been originally filed by attorneys other than Plaintiffs' attorneys of record, the Plaintiffs' attorneys of record did file a petition to substitute in as counsel in this case. *See Exhibits Submitted in Support of Lucent Defendants' Motion for Permanent Injunction*, Exhibits 4 & 5; *Plaintiffs' Response to Lucent Defendants' Reply Brief in Support of Motion for Permanent Injunction*, at 1 n. 1. As such, this court views the case filed in the 404th Judicial District as an attempt by the Plaintiffs to re-litigate this case. The defendants removed the case to the United States District Court for the Southern District of Texas, and apparently, the case has since been dismissed.

**Vasquez IV**–On August 20, 2001, thirteen days after this court entered its Memorandum Opinion in Vasquez II, the Plaintiffs filed suit in the District Court for the 49th Judicial District, Webb County, Texas against eight defendants and then later added a ninth defendant. The defendants removed this case to the United States District Court for the Southern District of Texas, where to this court's knowledge the case is still pending.

■ On September 28, 2001, Lucent filed a motion for a permanent injunction, which was later joined by the other defendants. The defendants seek to protect the ruling they obtained from this court's August 7th Memorandum Opinion by enjoining the Plaintiffs, Intervenors, and their attorneys of record from re-litigating issues already decided by this court in other

courts within Texas. In this case, there is more than a threat of subsequent suits by these Plaintiffs and Intervenors against these defendants; it has in fact happened and, unless restrained, will continue to happen, so that one day we may talk of Vasquez X or Vasquez XV. The court is convinced that "[a]n injunction is the appropriate sanction to preclude this 'judicial hopscotch'" around Texas. *In re Ocean Ranger Sinking Off Newfoundland,* 617 F.Supp. 435, 435 (E.D.La.1985).

## The *Forum Non Conveniens* Memorandum Opinion

■ Because the decision to grant the permanent injunction intertwines with this court's *forum non conveniens* Memorandum Opinion, a brief sketch of that Opinion is appropriate. When reviewing an action under diversity jurisdiction, all federal district courts in the Fifth Circuit must apply the federal law of *forum non conveniens,* rather than the state law. *See In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982,* 821 F.2d 1147, 1159 (5th Cir.1987), *vacated on other grounds and remanded, Pan American World Airways, Inc., v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *reinstated in relevant part, In re Air Crash Disaster Near New Orleans,* 883 F.2d 17 (5th Cir.1989). A Texas state court faced with a motion to dismiss on *forum non conveniens* grounds, however, would apply virtually the same analysis as the federal *forum non conveniens* test. *Baker v. Bell Helicopter Textron, Inc.,* 985 S.W.2d 272, 275 n. 2 & 277 (Tex.App.-Fort Worth 1999). The *forum non conveniens* law, which this court employed in its Memorandum Opinion, consists of a two-step approach. First, the court analyzed the availability and adequacy of an alternative foreign forum, and then it balanced the relevant private and public factors.

In deciding that Mexico offered an available and adequate alternative forum, the court noted that all activities surrounding the accident occurred in Mexico-including the manufacture, purchase, and operation of the Suburban and its tires-and that all the Plaintiffs were citizens of Mexico. Before moving to the balancing of the relevant private and public factors, the court also noted that a plaintiff's choice of forum decision receives less deference when a citizen of a foreign country is trying to avail herself of the more-favorable laws of the United States. With this in mind, the court proceeded to balance the relevant private and public factors and determined that both indicated Mexico as the more appropriate forum for this suit. In so balancing, the court gave great weight to its conclusion that Mexican law would be used to decide the outcome of the case. Both sides exhaustively briefed the choice-of-law issue and the Plaintiffs strenuously argued that the court should apply Texas law, but ultimately, the court decided Mexican law applied because Mexico was the forum with the most significant relationship to the accident and the parties.

To conclude the Memorandum Opinion dismissing the case with prejudice, the court wrote: "Here, the *Vasquez* plaintiffs brought suit in the Southern District of Texas. Rebuffed, they turned to the Texas state court in Orange County and were removed to this jurisdiction. A judgment of dismissal under *forum non conveniens* here should act to preclude a future lawsuit brought elsewhere." In issuing the Memorandum Opinion, this court believed it had brought an end to the Plaintiffs' march around Texas and their attempts to find a Texas forum that would hear this case. What has transpired since the seventh of August shows that the court was mistaken in its belief.

## The All Writs Act

This court has the authority to grant this injunction under the All Writs Act, 28

U.S.C. § 1651, in order to protect and effectuate its earlier judgment. Instead of "stand[ing] by idly while plaintiffs file suit after repetitious suit," a federal court may use the All Writs Act to enjoin future litigation. *Hill v. Estelle*, 423 F.Supp. 690, 695 (S.D.Tex.1976). The circumstances of this case support the use of an injunction because the Plaintiffs, Intervenors, and their attorneys have attempted to circumvent this court's judgment by seeking relief in other Texas courts.

■ Although the Anti–Injunction Act, 28 U.S.C. § 2283, generally prohibits federal courts from enjoining state court proceedings, the re-litigation exception to the Anti–Injunction Act allows a federal court to enjoin state courts from re-litigating issues finally decided by the federal court. *Carey*, 121 F.Supp.2d at 1073. The plain language of the Anti–Injunction Act permits a federal court to enjoin a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. According to the Fifth Circuit, this exception "assures the winner in a federal court that he will not be deprived of the fruits of his victory by a later contrary state judgment." *Woods Exploration and Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1312 (5th Cir.1971).

Because the Anti–Injunction Act only relates to state court proceedings, the Act does not prevent the court from enjoining the Plaintiffs, Intervenors, or their attorneys of record from re-litigating this court's choice-of-law decision or its dismissal on *forum non conveniens* grounds in any other federal court. Furthermore, any other federal district court in Texas would apply the same tests to decide the choice-of-law and *forum non conveniens* issues as this court did in its Memorandum Opinion. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding federal district courts must follow the choice-of-law rules of the state in which they sit); *In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982*, 821 F.2d 1147, 1159 (5th Cir.1987), *vacated on other grounds and remanded, Pan American World Airways, Inc., v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *reinstated in relevant part, In re Air Crash Disaster Near New Orleans*, 883 F.2d 17 (5th Cir.1989) (stating all district courts in the Fifth Circuit must apply the federal law of *forum non conveniens* ). Thus, pursuant to the All Writs Act, this court may enjoin the Plaintiffs, Intervenors, and their attorneys of record from re-litigating the issues of the applicability of the laws of Mexico and the propriety of the dismissal on *forum non conveniens* grounds.

### The Re-litigation Exception to the Anti–Injunction Act

The Fifth Circuit uses a four-part test to determine whether the re-litigation exception to the Anti–Injunction Act applies to preclude litigation of a claim in state court: (1) "the parties in a later action must be identical to (or at least in privity with) the parties in a prior action"; (2) "the judgment in the prior action must have been rendered by a court of competent jurisdiction"; (3) "the prior action must have concluded with a final judgment on the merits"; and (4) "the same claim or cause of action must be involved in both suits." *Regions Bank of Louisiana v. Rivet*, 224 F.3d 483, 488 (5th Cir.2000); *New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir.2000) (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994)).

The court's Permanent Injunction Order enjoins only the Plaintiffs, Intervenors, and their attorneys of record from re-litigating the issues decided in the court's earlier Memorandum Opinion. Thus, the

first prong of the Fifth Circuit's test is satisfied because all the parties are identical. The fact that the Plaintiffs named additional defendants in Vasquez IV does not alter this conclusion. *Carey,* 121 F.Supp.2d at 1074; *Dreyfus. v. First Nat. Bank,* 424 F.2d 1171, 1175–76 (7th Cir. 1970) ("[I]t is no objection that the former action included parties not joined in the present action, or vice versa, so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation.").

■ The court had jurisdiction to enter its August 7th Memorandum Opinion pursuant to 28 U.S.C. § 1332(a)(2), and this jurisdiction continues even after an order of dismissal has been entered to authorize the issuance of an injunction. *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 90 (5th Cir.1977); *Carey v. Sub Sea International, Inc.,* 121 F.Supp.2d 1071, 1073 (E.D.Tex.2000); 17 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 4226 (2d ed.1988). As such, the second prong of the Fifth Circuit's re-litigation exception test is satisfied because the earlier judgment was rendered by a court of competent jurisdiction.

■ The third prong of the Fifth Circuit's test requires the prior action to have been completed with a final judgment on the merits. The court's Memorandum Opinion concluded that Mexican law governed this case and dismissed it with prejudice on *forum non conveniens* grounds. The Fifth Circuit has held that a *forum non conveniens* dismissal that includes a choice-of-law determination is a final judgment and may be granted with prejudice. *Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 719 (5th Cir.1990). In fact, the plaintiffs demonstrated an acknowledgment of the finality of the Memorandum Opinion by appealing it to the Fifth Circuit. *See S.E.C. v. Independence Drilling*

*Corp.,* 595 F.2d 1006, 1008 (5th Cir.1979) (stating the Fifth Circuit's appellate jurisdiction is limited to final decisions of the district courts). As such, the third prong of the Fifth Circuit's test is also satisfied.

Finally, the fourth prong requires the same claim to be involved in both suits. The earlier Memorandum Opinion resolved two issues: (1) Mexican law governs the outcome of this case and (2) Mexico is the most appropriate forum for this case and it should be dismissed pursuant to the doctrine of *forum non conveniens.* At some point, in any proceeding between the defendants and the Plaintiffs and Intervenors, these issues will again arise and the state court will need to determine if Mexican law governs and if the case should be dismissed pursuant to the doctrine of *forum non conveniens.* For example, in Vasquez IV, the Plaintiffs' complaint raises only Texas state law claims against these defendants even though this court's Memorandum Opinion concluded Mexican law governs this dispute. Thus, a conflict exists between the relief sought by the Plaintiffs in Vasquez IV and this court's Memorandum Opinion in Vasquez II.

In deciding Mexican law governs, this court in its Memorandum Opinion applied the Texas state choice-of-law rules, which would also be applied by any Texas state court dealing with this issue. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984); *Gutierrez v. Collins,* 583 S.W.2d 312, 318–19 (Tex.1979). Accordingly, the choice-of-law issue presented to any Texas state court is identical to the choice-of law issue presented to this court in Vasquez II and the fourth prong of the Fifth Circuit's re-litigation exception test is satisfied for this issue.

In deciding to dismiss Vasquez II on *forum non conveniens* grounds, the court employed the federal law for this doctrine. In this case, with plaintiffs who are not

legal residents of the United States, a Texas state court may decline to hear a case on *forum non conveniens* grounds simply if the court finds that "in the interest of justice a claim or action ... would be more properly heard in a forum outside this state." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(a) (Vernon Supp. 2002). A Texas state court has certain guidelines to follow when deciding to dismiss a case on *forum non conveniens* grounds under the interest of justice standard. *Baker*, 985 S.W.2d at 277. The factors adopted by Texas are the same as those used by federal courts. *Id.* at 275 n. 2. Thus, a Texas state court would utilize virtually the same *forum non conveniens* test as this court employed in Vasquez II.

The Plaintiffs argue that because there are Texas state courts that have allowed lawsuits to proceed in Texas state courts after denying a defendants' motions to dismiss on *forum non conveniens* grounds, the Texas *forum non conveniens* doctrine differs from the federal doctrine. This argument is something of a non sequitur. Simply because a Texas state court reaches a different conclusion in a different case with a different record before it does not mean that the Texas *forum non conveniens* doctrine differs from the federal one. As discussed above, this court in Vasquez II applied virtually the same test a Texas state court would employ in analyzing a *forum non conveniens* issue. The Plaintiffs have failed to demonstrate how the analysis conducted by a Texas state court would differ in any material respect from the analysis employed by this court in Vasquez II. The Plaintiffs have merely shown that in different cases with different facts, a state court might deny a defendant's motion to dismiss on *forum non conveniens* grounds. This does little to advance the Plaintiffs' argument. As such, the fourth prong of the Fifth Circuit's test is also satisfied for this court's earlier *forum non conveniens* decision.

■ Because all four prongs of the relitigation exception to the Anti–Injunction Act are satisfied, the Anti–Injunction Act does not forbid enjoining the Plaintiffs, Intervenors, or their attorneys of record from pursuing this suit in Texas state court. Furthermore, an injunction prohibiting the filing of any future actions in state court does not implicate the Anti–Injunction Act. *Royal Ins. Co. of America v. Quinn–L Capital Corp.*, 3 F.3d 877, 884 (5th Cir.1993). Thus, the court has the authority under the All Writs Act to grant this injunction both for suits brought in the federal and state courts of Texas.

### *Bellorin v. Bridgestone/Firestone, Inc.*

During oral arguments, there was some discussion of Judge Furgeson's Order Granting Plaintiffs' Motion to Remand in *Bellorin v. Bridgestone/Firestone, Inc. Bellorin v. Bridgestone/Firestone, Inc.*, No. P–01–CA–034, slip opin. (W.D.Tex. August 30, 2001). Bellorin involved Mexican and Venezuelan plaintiffs who were allegedly injured in automobile accidents in Mexico and Venezuela. All the plaintiffs alleged that they were driving Ford Explorers with Firestone brand tires and that the accidents were caused by tire failures. The plaintiffs originally filed in Texas state court, but the defendants removed to federal court based upon diversity jurisdiction. The plaintiffs moved to remand claiming alien parties existed on both sides of the controversy, and thus no diversity existed. The defendants claimed that all alien defendants were fraudulently joined. Thus, in this opinion, Judge Furgeson was faced with deciding whether there was any reasonable possibility that a Texas court might impose liability on a non-diverse defendant. If so, these defendants were not fraudulently joined and the case would be remanded to state court.

The court decided that the defendants failed to show that a Texas court could not possibly find liability on Bridgestone Corporation, a Japanese company, and as such, Bridgestone Corporation was not fraudulently joined. Accordingly, the court remanded the case back to state court. During its discussion, the court briefly addressed whether Texas or Mexican/Venezuelan law would apply. The court found that while Mexican/Venezuelan law might ultimately apply, at this stage of the litigation, on a motion to remand, the court would resolve the issue in favor of the plaintiffs.

During oral arguments in the present case, counsel for the Plaintiffs cited this decision by Judge Furgeson as support for why the motion for a permanent injunction should be denied. This court is unpersuaded by counsel's argument. First Judge Furgeson had a much more complete record before him than this court did when it entered its August 7th Memorandum Opinion and a court may only decide issues in a case based upon the record before it. Second, Judge Furgeson's opinion was rendered with regard to a different motion than this court dealt with in Vasquez II. All Judge Furgeson decided in *Bellorin* is that a Texas state court could possibly find Bridgestone Corporation liable under Texas law. With over 300 Texas state civil courts, Judge Furgeson was likely correct in holding that at least one Texas state civil court could have found Bridgestone Corporation liable. Finally, it is important to note that Judge Furgeson never decided Texas law should apply, rather for purposes of the motion before him, he resolved the issue in favor of the plaintiffs. In fact, the court stated that eventually a court may decide that Mexican/Venezuelan law should be applied. Hence, the *Bellorin* opinion does little to advance the Plaintiffs' arguments.

## Conclusion

The court finds that it has the authority to issue this injunction pursuant to the All Writs Act, 28 U.S.C. § 1651, and that the Anti–Injunction Act, 28 U.S.C. § 2283, does not bar enjoining the Plaintiffs, Intervenors, or their attorneys of record from re-litigating these claims in Texas state court.